## FARMERS LOAN & TRUST COMPANY V. Z. T. FUNK.

FILED OCTOBER 7, 1896.  No. 6820.

1. **Constitutional Law**: CORPORATIONS: LIABILITY OF STOCKHOLDERS. The provisions of section 7, article 11, of the constitution of Nebraska, designated "Corporations," that "every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors over and above the amount of stock by him held to an amount equal to his respective stock or shares so held, for all its liabilities accruing while he remains such stockholder," are enforceable without special supplementary statutory enactments.

2. **Corporations**: LIABILITY OF STOCKHOLDERS: ACTION BY CREDITOR. The special individual liability of a stockholder in a banking corporation or institution, superadded to his ordinary liability by the above quoted section of the constitution, is for the creation of a trust fund for the benefit of all creditors of the banking corporation or institution in which stock is held, and an action to render available such liability must be prosecuted by one creditor of such corporation or institution for the benefit of all other creditors, or by the receiver of such corporation or institution when there is a receiver.

3. **Banks and Banking**: LIABILITY OF STOCKHOLDERS: ENFORCEMENT. The requirements of section 4, article 11, designated "Miscellaneous Corporations," of the constitution, that, before enforcement of individual liability of stockholders, there must be judicially ascertained the indebtedness proposed to be enforced, and that the assets of the corporation be first exhausted, *held* applicable to the stockholder's liability in banking corporations or institutions described by section 7 of the same article.

ERROR from the district court of Brown county. Tried below before BARTOW, J.

The facts are stated by the commissioner.

*M. J. Sweeley* and *P. D. McAndrew*, for plaintiff in error:

The following section of the constitution is self-executing: "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors over and above the amount of stock by him held to an amount equal to his respective stock or shares so

27

held, for all its liabilities accruing while he remains such stockholder; and all banking corporations shall publish quarterly statements under oath of their assets and liabilities." (Constitution, sec. 7, art. 11, under "Miscellaneous Corporations"; *State v. Weston*, 4 Neb., 216; *Willis v. St. Paul Sanitation Co.*, 50 N. W. Rep. [Minn.], 1110; *Thomas v. Owens*, 4 Md., 189; *Reynolds v. Taylor*, 43 Ala., 420; *Miller v. Marx*, 55 Ala., 352; *People v. Hoge*, 55 Cal., 612; *Hentig v. James*, 22 Kan., 326; *Fowler v. Lamson*, 34 N. E. Rep. [Ill.], 932.)

By filing its claim with the receiver, plaintiff did not lose its right to proceed against the stockholders. (*Shellington v. Howland*, 53 N. Y., 371; *Sleeper v. Goodwin*, 67 Wis., 579; *First Nat. Bank of Barre v. Hingham Mfg. Co.*, 127 Mass., 563; 2 Beach, Private Corporations, sec. 658.)

The action was properly brought by plaintiff as a creditor in its individual capacity. (2 Morawetz, Private Corporations, sec. 869; 1 Cook, Stock & Stockholders, sec. 218; Thompson, Liability of Stockholders, sec. 341.)

Plaintiff concedes that this suit might have been brought in equity. Had that been done it should have been for the benefit of all the creditors, and perhaps against all the stockholders, but it contends that it had its election, and when the action is at law it must be by a single creditor and against a single stockholder. (1 Cook, Stock & Stockholders, sec. 220; *First Nat. Bank of Barre v. Hingham Mfg. Co.*, 127 Mass., 563; *Mason v. Alexander*, 44 O. St., 318; *Bank of Poughkeepsie v. Ibbotson*, 24 Wend. [N. Y.], 479; *Flour City Nat. Bank v. Wechselberg*, 45 Fed. Rep., 547; *Norris v. Johnson*, 34 Md., 485; *Abbey v. Grimes Dry Goods Co.*, 24 Pac. Rep. [Kan.], 426; *Flash v. Conn*, 109 U. S., 371; *Kennedy v. Gibson*, 8 Wall. [U. S.], 498; *Casey v. Galli*, 94 U. S., 673; *Hatch v. Dana*, 101 U. S., 213; *Terry v. Little*, 101 U. S., 216; *Fuller v. Ledden*, 87 Ill., 310; *McCarthy v. Lavasche*, 89 Ill., 270; *Hull v. Burtis*, 90 Ill., 213; *Culver v. Third Nat. Bank of Chicago*, 64 Ill., 528; *Freeland v. McCollough*, 43 Am. Dec. [N. Y.], 685, note and cases cited.)

Farmers Loan & Trust Co. v. Funk.

Plaintiff was not compelled to reduce its claim to judgment and exhaust the assets of the bank as conditions precedent to suit. (*Terry v. Anderson*, 95 U. S., 632; *Mills v. Scott*, 99 U. S., 29; *Hatch v. Dana*, 101 U. S., 213; *Marine & River Phosphate Mining & Mfg. Co. v. Bradley*, 105 U. S., 175; *McDonnell v. Alabama Gold Life Ins. Co.*, 5 So. Rep. [Ala.], 120; *Flour City Nat. Bank v. Wechselberg*, 45 Fed. Rep., 547; *Abbott v. Aspinwall*, 26 Barb. [N. Y.], 202; *Perkins v. Church*, 31 Barb. [N. Y.], 84; *Paine v. Stewart*, 33 Conn., 516; *Munger v. Jacobson*, 99 Ill., 349; *Kincaid v. Dwinelle*, 59 N. Y., 548; *Toucey v. Bowen*, 1 Biss. [U. S.], 81; *Kennedy v. Gibson*, 8 Wall. [U. S.], 498; *Moses v. Oconee Bank*, 1 Lea [Tenn.], 398; *Morgan v. Lewis*, 17 N. E. Rep. [O.], 558.)

*R. M. Logan, contra:*

An action at law cannot be maintained by a creditor against an individual stockholder to enforce the statutory liability for corporate debts; but if such an action will lie, plaintiff must reduce its claim to judgment and exhaust the assets of the bank as conditions precedent. (*Coleman v. White*, 14 Wis., 762; *Sleeper v. Goodwin*, 31 N. W. Rep. [Wis.], 355; *Harris v. First Parish of Dorchester*, 23 Pick. [Mass.], 112; *Smith v. Huckabee*, 53 Ala., 191; *Baker v. Atlas Bank*, 9 Met. [Mass.], 182; *Crease v. Babcock*, 10 Met. [Mass.], 525; *Spear v. Grant*, 16 Mass., 9; *Spence v. Shapard*, 57 Ala., 598; *Judson v. Rossie Galena Co.*, 38 Am. Dec. [N. Y.], 569; *Briggs v. Penniman*, 18 Am. Dec. [N. Y.], 454; *Morgan v. New York R. Co.*, 40 Am. Dec. [N. Y.], 244; *Wright v. McCormack*, 17 O. St., 86; *Umsted v. Buskirk*, 17 O. St., 113; *Brown v. Hitchcock*, 36 O. St., 667; *Pollard v. Bailey*, 20 Wall. [U. S.], 520; *Globe Publishing Co. v. State Bank of Nebraska*, 41 Neb., 175.)

*J. A. Gallaher,* also for defendant in error.

References: *Belknap v. North American Life Ins. Co.*, 11 Hun [N. Y.], 282; *Cole v. Knickerbocker Life Ins. Co.*, 23 Hun [N. Y.], 255; *Paulsen v. Van Steenbergh*, 65 How. Pr.

[N. Y.], 342; *Stewart v. Lay*, 45 Ia., 604; *Allen v. Clayton*, 63 Ia., 11; 2 Morawetz, Corporations, sec. 748.

RYAN, C.

By its petition filed in the district court of Brown county plaintiff alleged that on the 23d of June, 1892, it deposited in the Ainsworth State Bank $5,000, for which there was issued by the bank its certificate of deposit payable four months after date, with eight per cent per annum interest; that, with the exception of two payments, in the aggregate amounting to $3,040, said certificate was unpaid, and that after said issue of its certificate of deposit said bank had failed and become insolvent, and that by reason of such failure and insolvency plaintiff was unable to enforce or collect said claim from said bank. The sole defendant was Z. T. Funk, against whom the following were the only allegations contained in the petition, to-wit: "That on the 23d day of June, 1892, and at the time the liability of said bank to plaintiff was incurred, as hereinbefore alleged, the defendant, Z. T. Funk, was a stockholder in said Ainsworth State Bank and at said time held therein one share of stock of the total par value of one hundred dollars." Following the above described and quoted allegations there was a prayer for judgment in the sum of $100 and interest against Mr. Funk. There were, in effect, denials of the averments of the petition, followed by allegations that for the State Bank of Ainsworth a receiver had been appointed before this action was brought, and that plaintiff, on the 9th day of January, 1893, had filed the claim sued on in this action and that said claim was still in the hands of said receiver pending adjudication by him. It was also answered that there were sufficient assets to pay the bank's indebtedness which the receiver was endeavoring to collect, and that no suit could be maintained till the assets of the bank were exhausted, and that neither a judgment had been rendered nor an execution issued against said bank when this action was brought.

By reply there was a denial of each averment of the answer except that a receiver had been appointed for the bank, which alleged fact was admitted. On the trial the proofs were that the assets of the bank had not been exhausted and the receiver, being sworn as a witness, in his testimony estimated that when realized said assets would enable him to pay about ten per cent of the indebtedness of the bank. It was further shown that no judgment had been rendered and of course no execution had ever been issued against the bank on plaintiff's claim. There was a judgment in the district court for the defendant and this error proceeding is prosecuted by the plaintiff for its reversal.

In regard to the necessity of a judgment to establish the amount of its claim against the bank plaintiff insists that it was sufficient for this purpose to file its claim with the receiver of the bank. The interest which this contention might elicit is wholly destroyed by the consideration that by its reply plaintiff denied certain averments of the answer, among which was one that his claim was filed as the plaintiff now in argument assumes it was. What effect this filing would have had in a proper case we cannot therefore determine.

In *Globe Publishing Co. v. State Bank of Nebraska*, 41 Neb., 175, there was quoted section 4, article 11, of the constitution of this state, of which the provisions are as follows: "In all cases of claims against corporations and joint stock associations, the exact amount justly due shall be first ascertained, and, after the corporate property shall have been exhausted, the original subscribers thereof shall be individually liable to the extent of their unpaid subscription and the liability for the unpaid subscription shall follow the stock." Following the above quotation was this language: "The word 'ascertained' in this provision we take to mean 'judicially ascertained,' and to 'judicially ascertain' the amount due from a corporation to a creditor means to have the finding and judgment or decree of a court as to such amount. Such

an ascertainment of a debt due from a corporation could be ascertained, and ascertained only, within the meaning of this constitution, in a suit brought by a creditor of a corporation against it, not against the stockholders thereof, nor against the stockholders and corporation jointly. The expression in the constitutional provision just quoted above, 'that after the corporate property shall have been exhausted,' means exhausted by judicial proceedings; that is, when executions issued on judgments or decrees rendered against corporations shall be returned unsatisfied. This constitutional provision is the supreme law of the land and we are not at liberty nor desirous of evading it or construing it away. We think, therefore, that the creditors of a *de jure* corporation have no right of action against the stockholders thereof until they have reduced their claims against the corporation to judgment and until an execution issued upon such judgment has been returned wholly or in part unsatisfied. It follows from this that a creditor's cause of action against the stockholders of a corporation under said section 136 would not accrue until such creditor had sued the corporation for the corporate debt, obtained a judgment thereon, and an execution issued on such judgment had been returned, at least in part, unsatisfied."

Counsel for plaintiff concede that the above construction is proper as applied to section 136, chapter 11, General Statutes, 1873, which prescribed a penalty for failure to publish notice of incorporation, but criticises the general language used as to the ascertainment of the amount due and exhausting the corporate property, as not being applicable to banking corporations. It is also insisted by plaintiff that the receiver was not the proper party to bring this action, and that any creditor of the bank, for himself alone, to the extent of his being such a creditor, had a right of action against any shareholder to an amount equal to the par value of such shareholder's stock in the bank. In line with its above noted criticism of the language quoted from *Globe Publishing Co. v.*

*State Bank of Nebraska* it is argued that neither judgment nor issue and return of execution was an indispensable condition precedent. These questions we shall now consider as general propositions, in view of the facts already stated.

Section 7, article 11, designated "Corporations," of the constitution is in this language: "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors over and above the amount of stock by him held, to an amount equal to his respective stock or shares so held, for all its liabilities accruing while he remains such stockholder, and all banking corporations shall publish quarterly statements under oath of their assets and liabilities." The liability of a stockholder, individually, for an amount equal to the par value of his stock requires no supplementary statutory legislation to render it effective and we must therefore enforce this liability under constitutional provisions, statutory enactments, and legal principles of general application. (*State v. Weston*, 4 Neb., 216; *In re Petition of Attorney General*, 40 Neb., 402.)

At common law, stockholders in a corporation proper were not personally liable for its debts. Quite early in the history of this country there were frequently inserted in the charters of corporations provisions fixing the individual liability of stockholders in certain contingencies. When there were presented cases in which it was sought to render effective these special provisions, the courts differed among themselves as to the nature of this liability, the character of the fund arising from it, the persons entitled to sue, and the manner in which the action should be brought. These four matters of difference, on examination, will be found to depend on one question, and that is whether this liability is to be deemed to have been created for the purpose of raising a trust fund for the payment of the debts of the corporation, or whether it created the relation of debtor and creditor directly between a creditor of the corporation and one of its stock-

holders. If the fund derived from this liability should be deemed a trust fund of the nature suggested, it naturally resulted that an equitable action was recognized as proper, with its concomitants of parties, beneficiaries, and relief. One of the first cases involving these questions was one which is regarded as the leading case in favor of the view that an action at law by a corporation creditor would lie to charge a stockholder personally. (*Bank of Poughkeepsie v. Ibbotson*, 24 Wend. [N. Y.], 473.) The liability sought to be enforced in this case was for all debts due and owing by the company at the time of its dissolution. Nelson, C. J., in delivering the opinion of the court, said: "It has been repeatedly held that the dissolution here spoken of, in order to subject the shareholder, may be shown short of judicial proceedings for that purpose. Having ceased to act, and being without funds and indebted, it is to be deemed dissolved so far as to give the remedy to the creditor. (19 Johns R., 456; Hopk., 300; 8 Cowen, 387.) This dissolution *sub modo* being proved, the liability of the stockholder, as declared by the act, becomes absolute; and I see no valid objection to the enforcement of it in a court of law." Later in this opinion it was said: "It was made a question in the several cases above referred to whether the suit in equity could be maintained, on the ground of a remedy at law; the answer given confirms the view we have taken—it is that the creditor is entitled to contribution from all stockholders if requisite to the satisfaction of his debt, and that numerous suits might become necessary. To avoid this he may resort to that court. The creditors, if more than one, may also, it seems, if they apprehend a deficiency in the fund, enforce in equity a *pro rata* distribution. (8 Cowen, 392.) But it must be at their election." It is clear that the circumstance that no judicial proceeding was necessary to entitle a creditor of the corporation to proceed against one of its shareholders somewhat influenced the court, in the above case, to hold that a suit at law might be maintained by the creditor against the

stockholder. Moreover, it is clear that the liability of the stockholder to the corporation creditor was regarded as primary and not in any degree secondary. These considerations govern the cases which support the view that an action at law may be maintained by a corporation creditor against one of the stockholders to enforce an individual liability imposed by the statute. (*Vick v. Lane,* 56 Miss., 681; *Fuller v. Ledden,* 87 Ill., 310; *Norris v. Johnson,* 34 Md., 485; *Grund v. Tucker,* 5 Kan., 70.) It is noticeable that while these courts have said that an action at law may be prosecuted by an individual creditor against a stockholder, it has never been denied that a proceeding in equity might be maintained—indeed, in nearly all the cases this right of election is expressly recognized.

It has been held by other courts that the liability of the individual stockholder could be made available only in a court of equity. (*Pollard v. Bailey,* 20 Wall. [U. S.], 526; *Hornor v. Henning,* 93 U. S., 228; *Allen v. Arnold,* 31 Atl. Rep. [R. I.], 268; *Umsted v. Buskirk,* 17 O. St., 113; *Crease v. Babcock,* 10 Met. [Mass.], 525; *Tradesman Publishing Co. v. Knoxville Car-Wheel Co.,* 32 S. W. Rep. [Tenn.], 1097; *Coleman v. White,* 14 Wis., 762.)

The case of *Mills v. Scott,* 99 U. S., 25, was cited by plaintiff as sustaining his contention that an action might be brought at law by an individual creditor of a corporation against one of its stockholders. A reference to the opinion shows that this action was brought agreeably to the construction of the statutes of Georgia adopted by the supreme court of that state, and that the author of the opinion deferred to that construction, remarking, however, that "Such liability may undoubtedly be enforced by a suit in equity, and in many cases such proceeding would seem to be the only appropriate one, as was held in this court in *Pollard v. Bailey,* 20 Wall., 520." (See, also, *Terry v. Tubman,* 92 U. S., 156.)

In *Hornor v. Henning,* 93 U. S., 228, there was under consideration an act of congress providing for the forma-

tion of corporations within the District of Columbia in which was the provision that "If the indebtedness of any company organized under this act shall at any time exceed the amount of its capital stock, the trustees of such company assenting thereto shall be personally and individually liable for such excess to the creditors of the company." In this case there were cited, with approval, *Pollard v. Bailey* and *Terry v. Tubman* in support of the proposition that the action should be in equity, and we therefore> assume that such is the holding of that court when not controlled by state statutes and the construction thereon placed by state courts.

From the opinion of Brickell, C. J., in *Smith v. Huckabee*, 53 Ala., 191, is quoted the following language: "The members of a private corporation, not being personally liable for corporate debts, the capital of the corporation was the source of its credit. This capital, as a fund for the payment of corporate debts, embraced all the property, real and personal, of which the corporation has the beneficial ownership. The subscriptions of the several members to its capital stock, or the acquisitions from the use of the capital, were alike liable for the payment of corporate debts. A subscription for stock converts the subscriber into the debtor of the corporation to the amount subscribed, and in the event of the insolvency of the corporation can in equity be condemned to the satisfaction of creditors. In a court of equity 'the stock and other private property of corporation is deemed a trust fund for the payment of the debts of the corporation; so that the creditors have a lien or right of priority of payment on it in preference to any of the stockholders of the corporation. Therefore, if a corporation is dissolved the contracts of such corporation are not thereby deemed extinguished, but they survive the dissolution of the corporation.' (2 Story, Equity Jurisprudence, sec. 1252; *Wood v. Dummer*, 3 Mason [U. S.], 308; *Mumma v. Potomac Co.*, 8 Pet. [U. S.], 281; *Curran v. State of Arkansas*, 15 How. [U. S.], 304; *Paschall v. Whitsett*, 11 Ala., 472; *Allen*

*v. Montgomery R. Co.*, 11 Ala., 437.) When the legis-
lature imposed on the members of the corporation, in
the event of its dissolution, a personal liability for cor-
porate debts to the extent of their stock, it was a mere
increase of the security for such debts. It was not in-
tended to exempt from or diminish the liability of the
fund, which a court of equity regarded as pledged to the
payment of corporate debts. To this fund was super-
added the personal liability of the members and whatever
should be realized therefrom. In a court of equity only
was the capital of the corporation treated as a trust fund
and subjected to the payment of corporate debts. If the
fund could be reached at law by legal process against the
corporation, the remedy at law was adequate, and equity
would not interfere. Then, legal priorities, dependent
on legal remedies, would prevail. One creditor might
obtain a preference in payment over another. When, how-
ever, a resort to equity became necessary as the court
proceeded upon the ground of a trust attaching to all
corporate debts alike, equality was equity, and no legal
diligence would entitle one creditor to priority over an-
other." Later in this opinion Brickell, C. J., said: "The
liability is single, distinct in amount,—can it be split up
into as many several causes of action as there may be
creditors? That an entire or single cause of action may
not be divided or split into several, is an elementary prin-
ciple. The liability arises only on the dissolution of the
corporation. Until the dissolution it is contingent.
That is the event rendering it capable of enforcement.
On that event it accrues for the debts of the corporation,
limited to the extent of the stock. If a suit is maintaina-
ble, which creditor shall be entitled to priority, he who
first commences suit or he who, by superior diligence,
first obtains judgment? Can the stockholder, after a
dissolution of the corporation, when its credit is im-
paired, avail himself of its condition to pay such cred-
itors as he may choose to prefer and thereby absolve him-
self from a liability due alike to all creditors? If he is

liable to a suit at law at the instance of any corporate
creditor how can this right be denied him? Can he
speculate in the debts of the dissolved corporation and
avail himself of such debts as he may purchase as a set
off to his liability? To what extent can the set-off be al-
lowed—for the nominal value of the debts, or the sum he
paid for them? Suppose the corporation really indebted
to him at its dissolution, can he set off such debt against
the action of a creditor pursuing a right not derived from
the corporation and which the corporation never had ca-
pacity to enforce because it was not due to it? The
statutory liability is an additional security for the cor-
porate debts, springing up on the dissolution of a cor-
poration, to which the legislature intended the principle
that equality is equity should be applied. Any creditor
of the corporation suing for himself and on behalf of all
other creditors, can in equity enforce it. In such suit all
rights and equities can be fully adjusted and every cred-
itor receive satisfaction of his debt to the extent to which
he is entitled. A court of law is incapable of this adjust-
ment and therefore the remedy is in equity only."

In *Wilson v. Book*, 43 Pac. Rep., 939, the supreme court
of Washington had under consideration the following
provisions of the constitution of that state, to-wit:
"Each stockholder of any banking * * * corpora-
tion * * * shall be individually and personally lia-
ble, equally and ratably, and not one for another, for all
contracts, debts, and engagements of such corporation ac-
cruing while they remain such stockholders, to the extent
of the amount of their stock therein, * * * in addition
to the amount invested in such shares." In the opinion
this language was used: "The liability is not on, but for,
the contract, debt, or agreement. That the liability so
provided is in addition to that flowing directly from the
holding of stock which has not been fully paid for. The
latter, in event of the insolvency of the corporation, is
held to be a trust fund for creditors and there is no good
reason why the same should not be held as to the former.

No satisfactory reason can be given for holding one to be a trust fund and the other not to be. There is no principle by which the two classes of liability can be distinguished, further than that one is primary and the other secondary; for while it is true that one can be enforced by the corporation itself and the other only by creditors, yet they were both created for the benefit of the corporation in carrying on its business and to secure to creditors the payment of its obligations. If the liability which is clearly primary must be treated as a trust fund for the benefit of all of the creditors of the corporation, greater reason exists why a liability which is secondary only, and created entirely for the benefit of the creditors, should likewise be treated as such trust fund. There is nothing in our constitution which defines the method by which this liability shall be made available; hence the method must be determined by the courts, and their aim should be to prescribe one which will accomplish the object of the provision with the least inconvenience to the creditors without unnecessary annoyance to the stockholders. A method which would allow a single creditor to maintain an action at law against one or more of the stockholders for his own benefit would be so unjust to other creditors and might result in such annoyance to the stockholders that only the most positive language would justify the courts in holding that the liability might be thus enforced. So to hold would enable one creditor to obtain more than his share of the fund which should be derived from this liability. Not only would such a holding allow a creditor to do this, but under it a stockholder could be subjected to a separate suit at the instance of each one of the creditors of the corporation. * * * The object of this provision was to furnish to creditors of certain corporations security which those of other kinds did not have. Stockholders of such corporations assumed a liability not imposed upon those of other kinds. But there is no good reason for holding that this liability made them active parties to the contracts of the

corporations. The creditors as a body will be as well, if not better protected if it is held that the stockholders are only sureties, and have a right to demand that the creditors shall first attempt to enforce their claims against the principal."

These free quotations have been made from *Smith v. Huckabce* and from *Wilson v. Book,* because, uninfluenced by statutory or constitutional provisions, each distinguished court entitled to the credit of one of these adjudications has concluded that the liability of the stockholders ought to be enforced as a secondary liability by a single action in equity for the benefit of all the creditors of the corporation. In the first of these cases there was considered the liability of a stockholder in any corporation; in the last it was shown that the same rules should obtain with respect to a stockholder's liability created by a constitutional provision most strikingly resembling our own. The reasoning of these cases is with reference to the rights both of the creditor and the oftentimes unfortunate stockholder, and, in view of these rights as defined, we can readily understand the purpose of the provision of section 4, article 11, designated "Miscellaneous Corporations," of the constitution of this state, that "In all cases of claims against corporations and joint stock associations, the exact amount justly due shall be first ascertained, and after the corporate property shall have been exhausted the original subscribers thereof shall be individually liable to the extent of their unpaid subscription, and the liability for the unpaid subscription shall follow the stock," supplemented, where banking institutions are concerned, by the provisions of section 7, that "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors over and above the amount of stock by him held, to an amount equal to his respective stock or shares so held, for all its liabilities accruing while he remains such stockholder." In each case the special individual liability is to be used as a trust fund for the benefit of the

creditors of the corporation, as pointed out in *Wilson v. Book,* and the method by which that fund is to be created is clearly indicated by the constitutional provisions just quoted.

In argument it was stated that there could be no question of the proposition that a receiver could not maintain an action for the benefit of the creditors of the bank, and in support of this proposition there were cited Morawetz, Corporations, section 869, and Cook, Stock & Stockholders, section 218. A reference to the authorities cited by these text-writers discloses the fact that the author, in each instance, founded this proposition on the decisions of those courts which hold that the liability of an individual stockholder is to the creditors of the corporation, and, therefore, not enforceable as a trust fund for the benefit of all creditors of the corporation. It would logically result from these premises that a receiver could not bring an action against the stockholders, for, according to this theory, the actions must be by creditors as such in their own right. Even in this, however, there is not a uniformity of views, for the action in *Stewart v. Lay,* 45 Ia., 604, was by a receiver, although the supreme court of that state, under special statute, holds that the action must be at law. The proper view to be taken of this proposition is so well expressed in *Wilson v. Book, supra,* that we quote therefrom the following language: "If the liability is secondary and for the benefit of all the creditors, it is a trust fund for the purpose of satisfying their claims. All the other property of an insolvent corporation is a trust fund for the same purpose, and there is no reason why trust funds for a single purpose, though derived from different sources, should not be collected and administered in the same proceeding. It is conceded that the appointment of a receiver for an insolvent corporation is the commencement of a proceeding to enforce liabilities of one kind, the proceeds of which will constitute a trust fund for the benefit of creditors, and there is no good reason why another should be commenced to

accomplish the same purpose as to liabilities of another kind. The receiver, when appointed, takes possession of all the property of the corporation for the benefit of all its creditors, and it should be held that he has the right, under the direction of the court, to enforce every liability of whatever nature which the court may find necessary to fully protect the rights of the creditors. In this way all creditors will share alike and the entire affairs of the corporation, including the adjustment of the liabilities of its stockholders, will be subject to the control of the court in a single action and unnecessary delay and expense prevented." The right of the receiver to enforce the liability of individual stockholders on behalf of the creditors is based, in the above opinion, on the fact that such liability is enforced for the realization of a trust fund for the benefit of all creditors of the corporation. As has already been noted, we cannot determine what effect should be held to follow the filing and allowance of a claim, so that this discussion by plaintiff of the necessity of a receiver applies only to the contention of the defendant, that the receiver, when there is one, can alone enforce the payment of the individual liability of a stockholder.

It follows from the views expressed that plaintiff, as a creditor of the State Bank of Ainsworth, had no right to maintain an action at law in his own right against the individual stockholder of the bank merely as such, for the collection of an amount equal to the par value of his stock. The judgment of the district court is therefore

AFFIRMED.